UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EMMA OCASIO, ROBERT WHITE, SUZANNE GUTHRIDGE, DUANNY ESCALANTE, SERAFIN COLON**<br><br>              **Plaintiffs,**<br><br>-against-<br><br>**1555 GRAND CONCOURSE LLC LIDIA MANAGEMENT CORP.,**<br><br>              **Defendants.** | Civ. 18-10159<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs by their attorneys, Bronx Legal Services, respectfully allege the following:

## PRELIMINARY STATEMENT

1.       Plaintiffs bring this action to address Defendants' concerted efforts to evict and or push them out from their homes in violation of federal and city laws, which protect disabled tenants.  Plaintiffs are all Human Immunodeficiency Virus (HIV) positive residents who are living at 1555 Grand Concourse, a rent stabilized building, through scattered site housing programs.[1]

2.       There are at least three major scattered site housing providers (Unique People Services, Housing and Services Inc., and Communilife) leasing rent stabilized apartments at 1555 Grand Concourse for their respective clients/under-tenants.

3.       Since becoming the owners of 1555 Grand Concourse in or around September 2017, Defendants have attempted to push out and or evict HIV positive residents under the

---

[1] Scattered site housing programs provide permanent housing to vulnerable populations such as those living with HIV positive diagnoses.  Scattered site housing programs are community based and independent housing programs, where a nonprofit housing provider leases apartments in their own name to then sublease to the program participant as an undertenant.

guise of terminating leases with the nonprofit housing providers.  Defendants communicated

to the scattered site housing providers that they would not renew their leases and demanded

that the apartments be surrendered.  However, at no point did Defendants serve the scattered

site housing providers with the notices required by State law prior to refusing to renew rent

stabilized leases.

4.      Defendants knew that Communilife and Unique People Services, two of the

nonprofit scattered site housing providers leasing apartments at the building work exclusively

with disabled tenants, the vast majority of whom are living with HIV.

5.      Until approximately August 2018, Plaintiffs' apartment rents were comparable to

the rents of other apartments in the building, but nonetheless, Defendants have singled out

disabled residents to force out of the building.

6.      After refusing to renew the scattered site provider leases without appropriate

notice, Defendants illegally raised the rents for Plaintiffs' apartments to $3,000.00 a month

each, which constitute illegal overcharges.  Each month Plaintiffs receive billing statements

sent to their homes with an ever escalating balance for an illegal rent amount, causing them

emotional distress.

7.      These attempts to clear the building of people with disabilities are in violation of

the Fair Housing Act and the New York City Human Rights laws.  Additionally, the

Defendants' attempts to either force out and or evict disabled residents with rental subsidy

programs violates the New York City laws preventing landlords and or managing agents

from discriminating based on lawful income source.  Defendants have acted intentionally and

willfully discriminated against Plaintiffs, and Defendants have acted with reckless disregard

for the rights of Plaintiffs on the basis of disability and lawful source of income.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  This court has supplemental jurisdiction over the New York City law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

10.     Plaintiff Emma Ocasio is the subtenant in apartment 2C of 1555 Grand Concourse, Bronx, New York 10452.  Ms. Ocasio has lived in the apartment for approximately twenty-three years.

11.     Plaintiff Robert White is the subtenant in apartment 3B of 1555 Grand Concourse, Bronx, New York 10452.  Mr. White has lived in the apartment for over a year and a half.

12.     Plaintiff Suzanne Guthridge is the subtenant in apartment 4I of 1555 Grand Concourse, Bronx, New York 10452.  Ms. Guthridge has lived in this apartment for over two years.

13.     Plaintiff Duanny Escalante is the subtenant in apartment 5T of 1555 Grand Concourse, Bronx, New York 10452.  Ms. Escalante has lived in this apartment for the last twenty-six years.

14.     Plaintiff Serafin Colon was the subtenant in apartment 5P of 1555 Grand Concourse, Bronx 10452. Mr. Colon lived in this apartment for approximately seven years. Mr. Colon now lives at 1685 Monroe Avenue, Apt. 2C, Bronx, New York 10457.

15.     Defendant 1555 Grand Concourse LLC is a limited liability corporation located and incorporated in New York.  1555 Grand Concourse is located at 35-01 30th Avenue, Suite 300, Astoria, New York 11103.

16.     Defendant Lidia Management Corp is listed with the New York City Department of Housing and Preservation and Development as the managing agent of 1555 Grand Concourse, Bronx, New York.  Lidia Management Corp is located and incorporated in New York and is located at 35-01 30th Avenue, Suite 300, Astoria, New York 11103.

## STATUTORY AND REGULATORY FRAMEWORK

### Fair Housing Act

17.     The Fair Housing Act ("FHA") and the Fair Housing Amendments Act ("FHAA") were enacted to protect buyers or renters of housing accommodations from a host of discriminatory practices.  The FHA makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status or national origin."  42 U.S.C. 3604 (a).

18.     Additionally, the FHA prohibits discrimination, "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or any person associated with that buyer or renter."  42 U.S.C. § 3604 (f)(1)(A)-(C).

19.     The FHA further prohibits discrimination, "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a handicap of that person; or a person

residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that person." 42 U.S.C. § 3604 (f)(2)(A)-(C).

20.     The FHA defines "handicap" as, "a physical or mental impairment which substantially limits one or more of such person's major life activities".  42 U.S.C. § 3602(h).

21.     A party is in violation of the FHA where they, "coerce, intimidate, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of [the FHA]."

### New York City Human Rights Law

22.     The New York City Council enacted the New York City Human Rights Law ("NYCHRL") in an explicit effort to prohibit intolerance, discrimination, hostility or violence against individuals based on their actual or perceived inclusion in a category of people who had historically suffered oppression, exclusion, and/or prejudice for their differences. The law expressly includes race, disability, sexual orientation, gender, and lawful source of income as categories protected against discrimination. N.Y. Admin. Code §§ 8-101 *et seq.*

23.     The New York City Human Rights Law (N.Y. Admin. Code §§ 8-101 *et seq*.,) prohibits landlords and owners from discriminating against "against any person because of such person's actual or perceived….disability…of such person… in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith.."  N.Y. Admin. § 8-107 (5)(a)(2).

24.     The New York City Human Rights Law also prohibits landlords and owners from discriminating against "against any person because of ….any lawful source of income of such person… in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith.."   N.Y. Admin. § 8-107 (5)(a)(2).

## The Rent Stabilization Law and Code

25.     The Rent Stabilization Law ("RSL") is based on a legislative finding that a housing emergency exists in New York City requiring government regulation or rents and occupancy.   The Rent Stabilization Code ("RSC") contains the regulations promulgated pursuant to the RSL by the New York State Division of Housing and Community Renewal. .

26.     R.S.C. § 26-512(a) prohibits property owners subject to the law from charging or collecting any rent in excess of the "initial legal regulated rent or adjusted initial legal regulated rent." §26-512(b)(4)(iii) states that when an owner charges rent in excess of the lawful rent, he or she "shall provide for a cash refund or a credit, to be applied against future rent, in the amount of any rent overcharge collected" and any penalties, costs, attorney's fees and interest from the date of the overcharge.

27.     R.S.C. §26-516(a) provides that an owner found to have collected an overcharge above the rent authorized by law shall be liable to the tenant for a penalty equal to three times the amount of such overcharge.

## New York City Tenant Harassment Law

28.     Pursuant to Paragraph 48, §27-2004 of the Administrative Code of New York, "harassment" is defined as any act or omission by or on behalf of an owner that:

    i. Causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy, and

    ii. Includes one or more of the following:

    a. Using force against, or making express or implied threats that force will be used against, any person lawfully entitled to occupancy of such dwelling unit;

    b. Repeated interruptions or discontinuances of essential services, or an interruption or discontinuance of an essential service for an extended duration or of such significance as to substantially impair the habitability of such dwelling unit;

    c. Failing to comply with the provisions of subdivision c of section 27-2140 of this chapter;

    d. Commencing repeated baseless or frivolous court proceedings against any person lawfully entitled to occupancy of such dwelling unit;

    e. Removing the possessions of any person lawfully entitled to occupancy of such dwelling unit;

    f. Removing the door at the entrance to an occupied dwelling unit; removing, plugging, or otherwise rendering the lock on such entrance door inoperable; or changing the lock on such entrance door without supplying a key to the new lock to the persons lawfully entitled to occupancy of such dwelling unit;

    g. Other repeated acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace or quiet of any person lawfully entitled to occupancy of such dwelling unit or to surrender or waive any right s in relation to such occupancy.

29.    Pursuant to Section 27-2115(m)(2) of the Administrative Code of the City of New York, the court may do the following if harassment is found:

    b. The Court may issue an order restraining the owner of the property from continuing to harass the tenant(s) and directing the owner to ensure that no further harassment occurs;

    c. The court may impose a civil penalty not less than $1,000.00 and not more than $5,000.00 for each dwelling unit in which a tenant or any person lawfully entitled to occupancy of such unit has been subject of the harassment; The court may provide such other relief as the court deems appropriate.

**FACTS**

30.     Plaintiffs are or were all under-tenants living in various apartments of 1555 Grand Concourse, a rent stabilized building in the Bronx owned and managed by Defendants.

31.     Plaintiffs are all people living with disabilities including HIV and related medical conditions.

32.     HIV is a virus that attacks the immune system and leaves the body unable to ward off infection and disease. As the immune system deteriorates, HIV prevents the body from defending against new or existing illnesses.  With such a compromised immune system, at later stages of infection, patients can develop opportunistic infections which may lead to death.

33.     Almost all individuals living with HIV or Acquired Immune Deficiency Syndrome (AIDS), including Plaintiffs, have an extensive medication regimen that they must follow in order to stay healthy. Without stable housing, people living with HIV or AIDS find it extremely difficult to maintain such a regimen, because they are unable to properly store and refrigerate the medication or keep up with the additional nutritional burdens HIV/AIDS patients require in order to remain healthy.

34.     Because housing stability is key to maintaining medical compliance and the health of those living with HIV, a number of housing subsidies and programs are in place in New York City to assist people living with HIV.  These programs include HIV/AIDS Service Administration (HASA) benefits which include enhanced rental, transportation, and nutrition subsidies.  Additionally, there are many scattered site nonprofit housing providers that work with people living with HIV to provide independent and stable housing.

35.     Because Plaintiffs are all living with HIV, they receive HASA benefits and are scattered site housing tenants.  Their respective programs lease apartments from the landlord for them to occupy as under-tenants.

36.     Defendants became the owners and managers of 1555 Grand Concourse in or around September 2017.

37.     In or around the spring of 2018, Plaintiffs were told by their scattered site providers that Defendants were demanding that the scattered site providers surrender their apartments because the landlord was refusing to lease apartments to the scattered site programs any longer, and thus all residents must vacate.

38.     Defendants' agents have communicated directly to certain Plaintiffs that the landlord does not want any more "program tenants" in the building.

39.     Plaintiffs together with other neighbors began meeting to discuss the Defendants' conduct.  The tenants met with a tenant organizer from a local tenants' rights organization.

40.     The tenant organizer helped the tenants raise their concerns to the New York City Commission on Human Rights. The Commission on Human Rights then began an investigation of the subject building and Defendants' conduct.

41.     On or around May 15, 2018, the Commission on Human Rights sent Defendants a cease and desist letter regarding Defendants' discriminatory conduct towards scattered site tenants.

42.     Nonetheless, Plaintiffs have observed many of their neighbors, who were scattered site tenants, moving from the building, and are worried that they would be forced out next.

43.     Defendants have refused to offer renewal leases to Plaintiffs' scattered site providers.

44.     The scattered site organizations who are the tenants of record are rent stabilized tenants, who are entitled to notice if their lease is not renewed, but upon information and belief Defendants have not at any time served the scattered site providers with appropriate notice.

45.     In or around August 2018, Defendants started charging the scattered site providers $3,000.00 in monthly rent for certain apartments.  This amount is well above the legal regulated rent amounts for the subject apartments.

46.     Defendants' discrimination, harassment, and illegal overcharges have caused Plaintiffs extreme anxiety, which has exacerbated Plaintiffs' physical conditions.

**EMMA OCASIO**

47.     Emma Ocasio resides in apartment 2C at 1555 Grand Concourse, Bronx, New York since approximately 1995.

48.     Ms. Ocasio is HIV positive.  She is a scattered site tenant, and Unique People Services is leasing the apartment as the tenant of record.  Unique People Services is a nonprofit which serves HIV positive people.

49.     The majority of Ms. Ocasio's rent is paid by HASA.

50.     Ms. Ocasio has been informed by Unique People Services that Defendants do not want to continue leasing to any the program tenants.

51.     Ms. Ocasio has noticed many of the Unique People Services tenants have been moved out of the building.

52.     Ms. Ocasio was told by Unique People Services that Defendants are unwilling to lease to any of the program tenants and that their lease was not being renewed.  As a result, she would need to move.

53.     On or around August 1, 2018, Ms. Ocasio received a rental statement addressed to Unique People Services, showing that Defendants had raised the rent to the apartment to $3,000.00.

54.     Ms. Ocasio has not moved from her apartment, and she does not want to leave her home.  She feels distressed at the thought of relocating after so many years in her home.

**ROBERT WHITE**

55.     Plaintiff Robert White resides in apartment 3B at 1555 Grand Concourse, Bronx, New York.

56.     Mr. White is HIV positive in addition to a number of other chronic health issues. Mr. White has been living at the subject premises since February 2017.

57.     The majority of Mr. White's rent is paid by HASA.

58.     Prior to moving into this apartment, Mr. White lived in three different homeless shelters.

59.     Ever since securing  housing stability by living at the premises, Mr. White has been able to better care for his health and create a support network.  His medical providers are in close proximity to his apartment and it is easier to adhere to his medical regimen living in an apartment rather than various shelters.

60.     Mr. White is a scattered site tenant, and Unique People Services is leasing the apartment as the tenant of record.  Unique People Services is a nonprofit which serves HIV positive people.

61.     Mr. White has noticed many of the Unique People Services tenants have been moved out of the building.

62.     He was told by Unique People Services that the Defendants want the scattered site program apartments surrendered and, as a result, he must move.

63.     Mr. White has had conferences with case workers from Unique People Services, where he has expressed that he is not interested in moving and leaving his home, but the program indicated that Defendants are not willing to house Unique People Services tenants any longer.

64.     On or around August 1, 2018, Mr. White received rental statements from the landlord addressed to Unique People Services, which indicated a $3,000.00 rent charge.

65.     Mr. White does not wish to relocate, and he is emotionally distressed about the overcharge and the threats to move him from his home.

**SUZANNE GUTHRIDGE**

66.     Plaintiff Suzanne Guthridge resides in apartment 4I at 1555 Grand Concourse, Bronx, New York.

67.     Ms. Guthridge is HIV positive.  She receives a HASA rental subsidy, which pays the majority of her rent.

68.     Ms. Guthridge is a scattered site housing tenant, and the nonprofit housing provider leasing her apartment as the tenant of record is Communilife.

69.     Ms. Guthridge first learned that the Defendants were forcing out HIV positive tenants when Communilife informed her that the landlord was not renewing program tenant leases.

70.    Ms. Guthridge's caseworker from Communilife told her the landlord told Communilife that all tenants must vacate, and so Communilife would begin to move out and relocate residents, including her.

71.    Ms. Guthridge has resided in this apartment for over two years. During that time she has been able to establish an important support network and community with her neighbors. Ms. Guthridge does not want to relocate, because the support network she has built in her neighborhood is key to her health, because she manages a number of chronic health issues in addition to her HIV diagnosis. In particular, Ms. Guthridge has limited physical mobility, and she has neighbors, who help her with daily tasks. She feels devastated at the thought of losing her home and her community and her health suffered as a result.

**DUANNY ESCALANTE**

72.    Plaintiff Duanny Escalante resides in apartment 5T at 1555 Grand Concourse, Bronx, New York.

73.    Ms. Escalante is HIV positive. She receives a HASA rental subsidy, which pays the majority of her rent.

74.    Ms. Escalante is a scattered site housing tenant, and the nonprofit housing provider leasing her apartment as the tenant of record is Communilife.

75.    Ms. Escalante first learned that the Defendants were forcing out HIV positive tenants when Communilife informed her that the landlord was not renewing program tenant leases.

76.    Ms. Escalante's caseworker from Communilife told her the landlord told Communilife that all tenants must vacate by May 31, 2018 or be faced with potential lock outs.

77.     Ms. Escalante, having lived in the subject apartment for 27 years, was distraught and in disbelief.

78.     Accordingly, Ms. Escalante reached out directly to an agent of the landlord known to her as "Tony" with the help of the superintendent, who translated the conversation from English to Spanish for her.  During this conversation, the agent informed Ms. Escalante that the defendants are "evicting programs," and he could not do anything to help her.

79.     On another occasion, where Ms. Escalante spoke with the superintendent and someone from the managing office about repairs needed in her apartment, the managing agent directed the superintendent to just make quick fixes as more substantial work would be commenced when the program tenant was evicted.

80.     On or around August 1, 2018, Ms. Escalante received a rent statement for August's rent, addressed to Communilife, for $3,000.00.

81.     Ms. Escalante has suffered anxiety and emotional distress as her home of over two decades is being threatened.  Her physical and mental health would seriously deteriorate if she were forced to move from her home.

**SERAFIN COLON**

82.     Mr. Serafin Colon was the previous resident of apartment 5P at 1555 Grand Concourse, Bronx, New York.  Currently he resides at 1685 Monroe Avenue, Apartment 2C, Bronx, New York.

83.     Mr. Colon is HIV positive.  In addition, he also has a number of chronic health issues such as diabetes.  Due to his health conditions, Mr. Colon has limited physical mobility.

84.     Mr. Colon is a scattered site tenant, where Unique People Services leases his apartment as the tenant of record.  Unique People Services is a nonprofit which serves HIV positive people.

85.     The majority of Mr. Colon's rent was and is paid by HASA.

86.     Mr. Colon resided in Apartment 5P of 1555 Grand Concourse from sometime in 2011 to on or about June 21, 2018.

87.     On or around June 1, 2018, Mr. Colon was told by a Unique People Services caseworker that Defendants were not willing to lease apartments to the scattered site providers, and thus, all of the scattered site tenants would have to vacate.

88.     Mr. Colon felt very upset and frightened about the prospect of having to move from his home.  Initially, Mr. Colon told his caseworker he was unwilling to move from his home.  However, his caseworker told him that there was nothing they could do on his behalf since Defendants had made clear all scattered site program tenants had to vacate the building. Mr. Colon was told that if he did not relocate he could wind up evicted and or in a homeless shelter.

89.     Mr. Colon was terrified of going to a shelter because he thought his health conditions would worsen dramatically.  Feeling he had no other choice, Mr. Colon agreed to relocate to a different apartment Unique People Services was leasing.

90.      During the move to his new apartment, Mr. Colon's personal property was damaged.  Additionally, being forced to move has caused Mr. Colon to suffer emotional distress, which in turn has greatly impacted his physical health.

91.     Upon information and belief, that belief being based on observations of neighbors, apartment 5P has not been occupied by a new tenant.

## FIRST CLAIM FOR RELIEF

**Fair Housing Act, Disparate Treatment: 42 U.S.C. § 3604(f)(1)-(2)**

92.     Plaintiffs restate and reincorporate by reference the above paragraphs.

93.     Plaintiffs are people with a "handicap" within the meaning of the Fair Housing Act in that Plaintiffs all are diagnosed with HIV.  S*ee* 24 C.F.R. § 100.201

94.     The apartments at 1555 Grand Concourse, including those references herein, are "dwellings" within the meaning of 42 U.S.C. § 3602(h).

95.     Defendant 1555 Grand Concourse LLC is the owner and landlord of the subject apartments.  Defendants Lidia Management Corporation and Joseph Pistilli are registered as managing agents of the subject apartments.

96.     The FHA provides that "it shall be unlawful…[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provisions of services or facilities in connect with such dwelling, because of a handicap of  (A) that person; or …(C) any person associated with that person." 42 U.S.C. § 3604 (f)(2).

97.     The FHA prohibits discrimination, "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or any person associated with that buyer or renter."  42 U.S.C.  § 3604 (f)(1)(A)-(C).

98.     Plaintiffs are qualified to rent their respective apartments or to reside there as undertenants to their scattered site programs.

99.    Defendants illegally discriminated against Plaintiffs by refusing to renew the master lease with Plaintiffs' nonprofit housing providers because of Plaintiffs' disability status.

100.    Upon information and belief, that belief being based on conversations with neighbors in 1555 Grand Concourse, non-scattered site tenants have not been denied lease renewals.

101.    Defendant's conduct, as evidenced by its employees' statements, are willful, intentional, and in reckless disregard of the Plaintiff's rights under the FHA.

## SECOND CLAIM FOR RELIEF
### Fair Housing Act, Disparate Impact: 42 U.S.C. § 3604 (f)(2)

102.    Plaintiff restates and incorporates by reference the preceding paragraphs above as if full set forth herein.

66.    To the extent that Defendants' policy and practice of refusing to renew the leases of scattered site providers is deemed to constitute a "neutral practice," such practice has a disproportionate impact on those with disabilities, as well as those receiving rental subsidies in connection with their disabilities.

67.    Defendants are aware that Communilife and Unique People Services work with and sublease exclusively to disabled tenants, all or nearly all of which are HIV positive.

68.    Defendants' policy of evicting scattered site tenants accordingly has a predictably disproportionate adverse impact on individuals who are disabled within the meaning of the FHA.

## THIRD CLAIM FOR RELIEF

### Interference, Coercion, and Intimidation: 42 U.S.C. § 3617

69.     Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth.

70.     Plaintiffs are people with a "handicap" within the meaning of the Fair Housing Act. 42 U.S.C. § 3602(h).

71.     The FHA makes it, "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of or on account of his having exercised or enjoyed…. Any right granted or protected by" the FHA.

72.     Plaintiffs together with their neighbors met at various times with a tenant organizer and discussed the Defendants' refusal to grant lease renewals to the scattered site providers and the threats of eviction.

73.     Plaintiffs together with their neighbors were concerned at the escalating pressure to move in the building.

74.     As a result of these conversation and tenant organizing efforts, the tenants decided to consult with an attorney from the New York City Commission on Human Rights.

75.     Based on this consultation, on or around May 15, 2018, the New York City Commission on Human Rights sent a Cease and Desist letter to Defendants in regards to their discriminatory actions.

76.     Defendants continued to push for the surrender of apartments leased by scattered site housing providers.

77.     In fact, Defendants then escalated their discriminatory and coercive actions. Starting on or around August 1, 2018, as detailed above certain Plaintiffs began to receive rental statements from Defendants addressed to their respective scattered site housing providers with a $3,000.00 monthly rental charge.  This drastic rent increase is an illegal rent overcharge meant to

further coerce the scattered site housing providers and Plaintiffs into surrendering the subject apartments.

## FOURTH CLAIM FOR RELIEF

### New York City Human Rights Law, Disparate Treatment: N.Y. Admin. § 8-107 (5)(a)(2)

78.     Plaintiff restates and incorporates by reference the preceding paragraphs above as if full set forth herein.

79.     The New York City Human Rights Law (N.Y. Admin. Code §§ 8-101 *et seq*.,) prohibits landlords and owners from discriminating against "against any person because of such person's actual or perceived….disability…of such person… in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith.."   N.Y. Admin. § 8-107 (5)(a)(2).

80.     Plaintiffs are disabled within the meaning of the NYCHRL.

81.     Defendants are landlords and/or managing agents and/or owners within the meaning of the NYCHRL.

82.     Defendants illegally discriminated against Plaintiffs by discriminating in the terms and conditions of renting apartments because of disability, including, but not limited to, singling out the scattered site tenants for eviction.

83.     In terminating and or threating to terminate all tenancies for those who have a program or subsidy for HIV/AIDS patients, Defendants' conduct was willful, intentional, and in reckless disregard for the Plaintiffs' rights.

84.     Plaintiffs are "aggrieved person[s]" as defined in N.Y. Admin. § 8-502 (a), and have suffered damages as a direct and proximate result of Defendants' discriminatory conduct.

85.     Accordingly, under N.Y. Admin. § 8-502 (a) and (f), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, reasonable attorney's fees and costs.

### FIFTH CLAIM FOR RELIEF

**New York City Human Rights, Disparate Impact: N.Y. Admin. § 8-107 (5)(a)(2)**

86.     Plaintiffs restate and incorporate by reference the preceding paragraphs above as if full set forth herein.

87.     Defendants have instituted a policy of evicting tenants whose rental payment is made through scattered site nonprofit agencies.

88.     All of the scattered site program tenants, during the relevant time period, have a disability or handicap as defined by the New York City Human Rights Law.

89.     The scattered site programs referenced in this action operating at 1555 Grand Concourse work predominantly with HIV positive tenants.

90.     Defendants' policy of terminating the tenancies of those whose rent is paid through scattered site programs and or subsidies has a disparate impact on individuals who are disabled within the meaning of the NYCHRL.

### SIXTH CLAIM FOR RELIEF

**New York City Human Rights Law, Income Discrimination: N.Y. Admin. § 8-107 (5)(a)(2)**

91.     Plaintiffs restate and incorporate by reference the preceding paragraphs above as if fully set forth herein.

92.     The New York City Human Rights Law (N.Y. Admin. Code §§ 8-101 *et seq*.,) prohibits landlords and owners from discriminating against "against any person because of ….any lawful source of income of such person… in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith.."  N.Y. Admin. § 8-107 (5)(a)(2).

93.     The Plaintiffs' scattered site program providers pay monthly rent to the landlord on the disabled under-tenant's behalf, which is akin to any rental subsidy program or other form

of lawful income to pay one's rent in the city of New York.

94.     The scattered site providers are able to make these payments by collecting HASA subsidy payments and a tenant portion from Plaintiffs.

95.     Defendants illegally discriminated against Plaintiffs by discriminating in the terms and conditions of renting apartments by terminating the tenancies of those whose rent is paid through the a scattered site program.

96.     Plaintiffs are "aggrieved person[s]" as defined in N.Y. Admin. § 8-502 (a), and have suffered damages as a direct and proximate result of Defendants' discriminatory conduct.

97.     Accordingly, under N.Y. Admin. § 8-502 (a) and (f), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, reasonable attorney's fees and costs.

### SEVENTH CLAIM FOR RELIEF

**New York City Human Rights Law, Failure to Engage in Dialogue:**

**N.Y. Admin. § 8-107 (28)(c)**

98.     Plaintiffs restate and incorporate by reference the preceding paragraphs above as if fully set forth.

99.     The New York City Human Rights law provides that, "it shall be an unlawful discriminatory practice for an owner, lessor… or managing agent of, or other person have the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation…to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require an accommodation related to disability." N. Y. Admin §8-107(28)(c)

100.    Defendants were on notice of Plaintiffs' HIV status, because the scattered site providers at issue here work predominantly with HIV positive people.  Additionally, Defendants

were sent a letter by the New York City Human Rights Commission further informing them of Plaintiffs' disabilities.

101.    Defendants should have engaged in a cooperative dialogue with the disabled tenants directly affected by such a policy.

102.    Given Defendants' knowledge of Plaintiffs' disability, they were on notice that they may require an accommodation, but Defendants' have failed to engage in any dialogue about a reasonable accommodation so that Plaintiffs may remain in their homes.

103.    Defendants also failed to offer Plaintiffs an exception to their no scattered site policy to accommodate Plaintiffs' disabilities.

## EIGHTH CLAIM FOR RELIEF

### Tenant Harassment

104.    Plaintiffs restate and incorporate by reference the preceding paragraphs above as if fully set forth.

105.    Defendants' threats and implied threats to evict defendants and other program tenants constitute harassment pursuant to Administrative Code of New York Section 27-2004(ii)(g).

106.    Defendants seek a finding that the behaviors described in the complaint constitute violations of Section 27-2004(ii)(g) and for and injunction and civil penalties pursuant to Administrative Code of New York Section 27-2115(m)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request judgment against Defendants as follows:

(a) Declaring that Defendant's discriminatory practice violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*, the New York City Human Rights Law, and the New York City Administrative Code § 8-107 *et seq.*;

(b) Enjoining Defendants, Defendant's agents, employees and successors, and all other persons in active concert or participation from:

   i.   Discriminating against Plaintiff in the terms, conditions, or privileges of rental of a dwelling on the basis of disability or lawful source of income;

   ii.  Aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by the Fair Housing Act and New York City Human Rights Law;

   iii. Retaliating, coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise enjoyment of any rights granted or protected by the Fair Housing Act and New York City Human Rights law.

(c) Enjoining Defendants, Defendant's agents, employees and successors, and all other persons in active concert or participation to:

   i.   Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws; and

   ii.  Train all management, agents, and employees on fair housing laws;

   iii. Develop written procedures on the rental process, payment and fair

housing policy be distributed to all staff, tenants, and rental applications.

(d)  Awarding such damages to Plaintiffs as will fully compensate them for any economic loss, loss of rights, as well as for the humiliation, embarrassment, and emotional distress suffered to due to Defendants' discriminatory conduct;

(e)  Awarding punitive damages to Plaintiffs;

(f)  Finding the behaviors in the complaint constitute violations of Section 27-2005(d) of the Administrative Code of the City of New York and therefore classifying them as class C immediately hazardous violations according to Section 27-2115(m)(1) of the Administrative Code of the City of New York;

(g)  Enjoining Defendants' and their employees and agents from further violations of Section 27-2005(d) of the administrative Code of the City of New York in accordance with Section 27-2121 of the Administrative Code of the City of New York and pursuant to Section 27-2115(m)(2) of the Administrative Code of the City of New York;

(h)  Granting civil penalties in the amount $5,000 for each and every  incidents of harassment described, and such other relief as this court deems just and proper, pursuant to Section 27-2115(m)(2) of the Administrative Code of the City of New York; and

(i)  Awarding Plaintiffs reasonable attorneys' fees, costs and expenses incurred in prosecuting this action; and

(j)  Granting Plaintiffs such other and further relief as may be just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial on the merits by jury pursuant to Fed.R.Civ.P. 38.

Dated: November 1, 2018
        Bronx, New York

Respectfully Submitted,

By:     /s/ Eugene Chen Esq.

        BRONX LEGAL SERVICES.
        Edward Josephson
        Johanna Ocaña
        Eugene Chen
        369 E. 148 Street, 2nd Fl
        Bronx, New York 10455